Fayette Title & Trust Co. *v.* Nelson et al., Appellants.

Argued April 19, 1934.

Before TREXLER, P. J., KELLER, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*E. C. Higbee* of *Higbee, Matthews & Lewellyn,* and with him *E. D. Brown,* for appellants.

*A. E. Jones* of *Jones, Whitehill & Lane,* for appellee.

OPINION BY TREXLER, P. J., October 3, 1934:

Colvin G. Gans, the appellee, and his father, John H. Gans, gave a promissory note to the Fayette Title and Trust Company for $475. By payments it was reduced to $335 and a renewal note in the latter sum containing a warrant to confess judgment was given to the Trust Company. Judgment was entered against both Colvin and John Gans. The latter died. The note was presented at an audit of the estate and on a partial distribution a small sum was paid on account. Thereafter Colvin paid to the Trust Company the amount of the judgment still owing and took an assignment of it to himself. He then issued a writ of Sci. Fa. in the name of the Trust Company to his use against himself and the other heirs of John H. Gans, deceased, as terre tenants. The matter came before the court and jury. The trial judge ordered a verdict to be found in favor of the defendant, but after a motion for judgment n. o. v., the court en banc re-

versed the judgment and entered it in favor of the plaintiff. At the trial the plaintiff offered in evidence the record of the original judgment and the assignment to Colvin G. Gans and rested. The defendant offered in evidence the record of the orphans' court of Fayette County in the matter of the Estate of John H. Gans, deceased, showing that the judgment in question was presented as a claim against the estate and that a small sum was distributed to the Trust Company on a partial settlement of the estate. Colvin G. Gans was sworn in that proceeding and testified that the note was signed by him and his father and that he received the proceeds of the note and made payments on account of it and kept up the interest. When asked if the loan had been reduced from time to time he said "Yes," he reduced his end of it, but gave no figures. The court took the view that the reception of this testimony was error. We think it was competent. It was testimony out of his own mouth that he received the proceeds of the note. The question naturally follows, what did he do with the money? The sworn testimony of the plaintiff, against his interest, in another proceeding wherein he admitted receiving the money was competent to prove the fact. Stevenson v. Ebervale Coal Co., 201 Pa. 112, 50 A. 818.

With this testimony in the case, the jury could have found that having received the proceeds of the note, the plaintiff could not, without definite evidence as to how he disposed of the money, require the heirs of the other signer of the note to contribute. The receipt of the money, without anything else appearing, would be sufficient to support the inference that the note was given for the plaintiff's own purposes. If the matter had been left to the jury and it would have endeavored to fix any sum due to the plaintiff it would have been mere guess work. His statement that he reduced his end of it supplies no basis for finding any amount.

The trial judge evidently had this in mind but the court en banc, as stated, decided that the testimony taken at the audit should be excluded.

The matter is essentially a demand for contribution. The original judgment has been liquidated so far as the Trust Company is concerned. Its validity cannot be questioned, nor the original liability of the makers. When plaintiff took an assignment of the judgment he took it subject to any defense which his co-maker or his heirs could raise against it. The basis of his claim must be that he paid more than his rightful proportion of the debt. There is no prima facies arising by reason of the fact that the plaintiff has taken an assignment of the original judgment. He owed it and he paid it.

As we are sending this matter back for a new trial we take occasion to state that we do not support the argument of the defendant that the proceedings in the orphans' court are res adjudicata, and bar the plaintiff from asserting any right as against the heirs. The judgment note was presented and, of course, the liability of the estate as between it and the Trust Company was not questioned. In the opinion of the orphans' court the following appears:

"The testimony of one of the employes of the Trust Company shows that on August 19, 1925, Colvin G. Gans, a son of the decedent, and the decedent in his lifetime, executed a note to the Fayette Title & Trust Company for $475 and at the same time the son took credit in his account in the same banking institution for all the proceeds of this note. Later Colvin G. Gans reduced the note to its present amount, but the present indebtedness in the form of a judgment stands as a joint note. Colvin G. Gans in his testimony admitted that he received the proceeds of the note. Nevertheless it stands as a claim against the estate of the decedent. Upon pay-

ment thereof by the estate it can be subrogated and the amount thereof charged against the distributive share of Colvin G. Gans when the real estate is converted.'' This was merely a remark volunteered by the auditing judge. It was not involved in the question before him. Whether Colvin G. Gans was to have the amount owed by the estate deducted from his distributive share after the real estate was sold, and the proceeds about to be distributed, would be decided when such distribution was made and a decree could have been made to that effect and from that an appeal could have been taken. Of course, the issuing of the Sci. Fa. has hastened the decision of the question.

On a retrial, the question as to who was the real debtor, or what proportion as between the makers it was the duty of each one to pay can be determined and will presumably be a matter for the jury.

The judgment is reversed, and a new trial granted.